**KIRKPATRICK v. NEAL et al.**

No. 3857.

Court of Civil Appeals of Texas.
Beaumont.

June 25, 1941.

Rehearing Denied July 9, 1941.

520

Eskridge & Groce, of San Antonio, and Vinson, Elkins, Weems & Francis, of Houston, for appellant.

S. M. Helm, Allen, Helm & Jacobs, A. C. Buckner, and Arthur P. Terrell, all of Houston, for appellees.

O'QUINN, Justice.

This is an appeal by Blair Kirkpatrick, a minor (represented by his father, W. W. Kirkpatrick, as guardian ad litem) from a judgment of the 127th district court of Harris County, Texas, in favor of Miss Hazel Neal, a minor (suing by and through her father, Robert Neal, as next friend, and Robert Neal for himself), in the sum of (after remittitur) $21,123.95, on account of personal injuries sustained by Miss Neal on June 17, 1939, while riding as a gratuitous guest (within the purview of the Texas Guest Statute) of appellant, Blair Kirkpatrick, in an automobile driven by him, owned by his father, W. W. Kirkpatrick. The amounts of damage found by the jury were: Miss Neal, $18,800; Robert Neal, her father, $5,000; and hospital and medical charges, $1,025, but of this remittitur was made of $3,500 from the amount awarded Robert Neal, the father, and $201.05 from the hospital and medical charges, leaving the sum of $21,123.95 recovered in the judgment. Motion for a new trial was overruled, and this appeal is from that order.

The case was tried to a jury upon special issues, in answer to which the jury found:

(1) That appellant was driving his automobile at a speed in excess of 45 miles per hour prior to the accident;

(2) That he was driving his automobile at a speed which was dangerous under the circumstances;

(3) That he failed to keep a reasonable lookout;

(4) That he failed to keep his automobile under proper control;

(5) That he failed to reduce the speed of the automobile;

(6) That he failed to stop the automobile;

(7) That he failed to apply the brakes on the automobile.

The jury further found (in answer to separate issues) that each of the above men-

tioned acts or omissions was done by appellant "in heedless and reckless disregard" of the rights of the minor plaintiff Hazel Neal, and that each of said acts or omissions of appellant was a proximate cause of the injuries sustained by appellee Hazel Neal in the collision between the automobile in which she was riding (as the unpaid guest of appellant Blair Kirkpatrick) and a bridge on the highway over which they were driving. The jury further found that the collision between the automobile and the bridge was not the result of an unavoidable accident, and answered all defensive issues submitted in favor of appellees.

Appellant's first seven propositions complain that the evidence disclosed by the record was insufficient to raise a jury issue as to whether appellant, Blair Kirkpatrick, in operating the automobile at the time of the collision, under the circumstances, was guilty of heedless and reckless disregard of the safety and rights of appellee, Hazel Neal, in respect to (a) the speed at which he was driving his automobile, (b) his failure to keep a reasonable lookout, (c) his failure to keep his automobile under proper control, (d) his failure to reduce the speed of the automobile so as to avoid the collision, (e) his failure to stop the automobile so as to avoid the collision, and (f) his failure to apply the brakes on the automobile within such time and at such distance as to avoid the collision, and therefore such issues should not have been submitted to the jury, and that the answers of the jury finding these acts to have been committed by appellant in heedless and reckless disregard of the rights of appellee Hazel Neal should be set aside.

The record reflects that on June 17, 1939, appellee Hazel Neal, the daughter of Robert Neal, seventeen years of age, and who resided with her parents in the city of Houston, Texas, was riding in a Ford Coupe with Blair Kirkpatrick, (son of W. W. Kirkpatrick) about nineteen years of age, as the guest of Blair Kirkpatrick. There were two other persons riding in the automobile as guests of Blair Kirkpatrick, M. C. Vogelsang, a young man friend of Blair Kirkpatrick, some nineteen years of age, and a girl named Helen Dardeux. They left Houston at between four and five o'clock on the evening of June 17, 1939, to go to a barbecue at Bryan Beach some two miles south of the town of Freeport. This was about sixty or sixty-five miles from Houston. Blair Kirkpatrick drove the automobile, and Miss Neal sat next to him, and Vogelsang sat next to Miss Neal, and Miss Dardeux sat in Vogelsang's lap, it being a one-seated car. In going from Freeport down to the beach where the barbecue was being served, there was a narrow bridge over the Intercostal Canal over which they had to pass. The bridge was described as on a dangerous curve, and as narrow and dangerous. Vogelsang testified that his father told him about the bridge and cautioned him about it before they left Houston, and that he, M. C. Vogelsang, told Blair Kirkpatrick what his father had said about the bridge before they got to the bridge. Blair Kirkpatrick testified that " it was a dangerous bridge." When they started back to Houston that night Vogelsang warned Kirkpatrick to watch out for the bridge. The accident happened at about 10 p. m. There was a large lighted lantern hanging on an arm upright by the side of the bridge at the time of and just before the accident. It was testified that this could be seen from one-half to three-quarters of a mile. It was open coast country. This light could be easily seen before one reached the curve in the road. Vogelsang testified that the light was burning and could be plainly seen that night at the time of the accident. While these young people were at Bryan Beach, Blair Kirkpatrick and his date, Hazel Neal, became separated for a few minutes from Vogelsang and his date, Miss Helen Dardeux, and Miss Neal testified that Kirkpatrick asked her to marry him, which proposal she rejected. She said this offended Kirkpatrick, he saying to her "well hell come on then," and that she and Kirkpatrick went and got in the automobile, and before Vogelsang and Miss Dardeux could get in he started driving swiftly away toward Freeport, toward home; that he stopped and they got in the car. When the young people started back, Vogelsang's parents cautioned them about the bridge, and that he, Vogelsang, when he got in the car, told Blair, appellee, "Blair, you better take it easy, remember that bridge." Kirkpatrick denied that he proposed marriage to Miss Neal, and also denied that he was offended at her, and also denied that Vogelsang cautioned him about the bridge. Miss Neal testified that she asked Kirkpatrick to "slow down," but that he did not say anything, but kept driving fast not even looking at her, that he appeared to be angry at her; that she pleaded with him to stop but that he did not stop or slow down, but

kept on driving at the same speed. Vogelsang testified that his father had warned him about the bridge before they left Houston, and that he told Kirkpatrick about it, and that when they got to the bridge going down to Bryan Beach that he pointed out the bridge to Kirkpatrick as the dangerous bridge his father had warned about, that was in the daytime. Miss Neal testified that on the return trip Kirkpatrick drove the car at the rate of 75 to 80 miles an hour, that in going down they traveled about 60 to 65 miles an hour. The car still traveling at the rate shown collided with the railing, steel cable and wooden uprights of the bridge with such force that the car climbed up one of the steel supporting cables a distance of 18 or 20 feet, bending the steel rod at that distance from the floor of the bridge, and the striking force of the car against one of the wooden uprights which measured 14 x 14 inches, was such as that it was broken in two, and another one was cracked. After meeting with these obstacles, the car still had sufficient propelling force that it turned over, and hurtled through the air landing upside down on the floor of the bridge with its wheels straight up on the opposite end of the bridge. Miss Dardeux was killed, Miss Neal seriously injured, and Vogelsang was also injured.

■ As shown above, this is an action for damages under the guest statute, Article 6701b, Vernon's Annotated Civil Statutes of Texas. It reads:

"Art. 6701b. Sec. 1. No person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others.

"Sec. 2. This Act shall not relieve a public carrier or any owner or operator of a motor vehicle while the same is being demonstrated to a prospective purchaser, of responsibility for any injuries sustained by a passenger being transported by such public carrier, or by such owner or operator."

There is no contention that the accident was intentionally caused. The contention is that the appellant, Blair Kirkpatrick, in his driving of the automobile was heedless and reckless in his management of same. That his driving the automobile on and over the narrow and dangerous curve in the road as it approached the narrow one-way bridge at the speed with which he operated the automobile, knowing the condition, situation and difficulties of the road and bridge on and over which he was passing, after being cautioned as to same, and after being requested to moderate the speed of the car and which he failed to observe or do, his so operating the automobile was in heedless and reckless disregard of the safety of Miss Neal and the other occupants of the car. The evidence raised each of the issues submitted to the jury, and abundantly supported the answers given to same. These assignments are overruled.

■ Appellant Blair Kirkpatrick testified that in his opinion he was driving about 50 miles an hour when he collided with the bridge; that he did not see any lantern or light burning by the side of the bridge, nor did any one call his attention to same; nor did any one complain to him of the speed with which he was driving the car. Counsel for appellant strongly urge that this goes to acquit appellant of the charge of heedless and reckless driving under the circumstances. We think that these contentions (that defendant did not see the bridge, was not aware of its presence, that he did not see the burning lantern elevated by the side of the bridge) are but sure indexes that he was not keeping a proper lookout for the safety of the occupants of the car, for he had seen the bridge, the dangerous curve in the road at the approach to the bridge when they passed over same but a short time before, and he knew from previous warnings of the dangerous proximity of the bridge when they started on their return, and all the testimony, except appellant's disclosed the presence of the lighted lantern at the side of the bridge to warn travelers, Vogelsang's warning to look out for the bridge, and his failure to slacken the speed of the car, deny appellant's contention.

■ What we have said disposes of appellant's eighth to fourteenth propositions, inclusive, which variously assert that the verdict of the jury finding that the acts of appellant in the manner of his driving and management of the automobile just prior to and at the time of the collision

with the bridge, were in heedless and reckless disregard of the safety of appellee Hazel Neal, were contrary to the great preponderance of the evidence. The findings have ample support in the evidence.

We overrule appellant's 15th proposition which complains that the court "erroneously placed the duty on appellant in its definition of proximate cause of 'exercising ordinary care to reasonably forsee" the result of his acts of 'heedless and reckless disregard' to the rights of the minor plaintiff."

The appellees plead and the undisputed evidence showed that Miss Neal was a gratuitous guest of appellant within the purview of Article 6701b, commonly known as the Texas Guest Statute, at the time of the collision and resultant injuries. In response to special issues submitted by the court, the jury found that appellant in driving his automobile and managing same on the highway, acted in heedless and reckless disregard of the rights and safety of appellee, Miss Neal, in that he drove the automobile in excess of 45 miles per hour; drove the car at a dangerous rate of speed; failed to keep a proper lookout; failed to keep the automobile under proper control; failed to reduce the speed of the car so as to avoid the collision; failed to stop the automobile so as to avoid the collision; and failed to apply the brakes on the automobile within such time and at such distance as to avoid the collision. The jury further found that each of the foregoing acts of "heedless and reckless disregard" was a proximate cause of the injuries suffered by appellee Miss Neal.

The court submitted to the jury and it found that the accident was not an unavoidable accident; and further, in favor of appellee on the issues of contributory negligence submitted by the court; and that the acts of appellant were not due solely to "momentary thoughtlessness, inadvertence or error of judgment."

In his charge to the jury, the court defined "proximate cause" as follows:

"By the term 'proximate cause,' as used in this charge, is meant a cause which in a natural and continuous sequence, unbroken by any new and independent cause, produces an event and without which the event would not have occurred. And to be a proximate cause of an event it should have been reasonably anticipated and foreseen by a person of ordinary prudence in the exercise of ordinary care that the event, or some similar event, would result from such cause as a natural and probable consequence. There may be more than one proximate cause of an event.

"By the term 'sole proximate cause,' as used in this charge, is meant the only proximate cause, and none other.

"By the term 'new and independent cause' is meant the act or omission of a separate and independent agency which destroys the causal connection between the negligent act or omission complained of and the injury complained of, and thereby becomes, in itself, the immediate cause of such injury.

"You are instructed that by the term 'natural,' as used in the foregoing instructions defining 'proximate cause,' is meant normal or in accordance with ordinary experience, and by the term 'continuous,' as used therein, is meant without break, cessation or interruption, and by the word 'sequence,' as used therein, is meant succession or that which follows as a result."

Appellant made the followng objections to the definition of "proximate cause":

"These defendants object and except to the definition of 'proximate cause' as applied to the minor defendant, Blair Kirkpatrick, because:

"(a) It places a greater duty and burden upon the minor defendant, Blair Kirkpatrick, than the law requires under the Texas Guest Statutes in that it places the duty upon the minor defendant, Blair Kirkpatrick, to exercise that degree of care of an ordinarily prudent person in the exercise of ordinary care to reasonably anticipate and foresee the happening of the event complained of or some similar event, when under the Texas Guest Statute and the decisions construing it the minor defendant, Blair Kirkpatrick, did not owe to the minor plaintiff any duty whatsoever of exercising ordinary care to reasonably anticipate or foresee that his acts of commission or omission would result in injury to Miss Hazel Neal or some similar injury, but in all of the issues submitted by the Court in its charge dealing with proximate cause, taken in connection with the definition of proximate cause, the jury is instructed and informed that if the minor defendant was guilty of such an entire want of care (not excluding but including ordinary care) sufficient to raise the belief or presumption that his act of commission or omission was the result of conscious indifference to the

right, welfare or safety of Miss Hazel Neal and that he should have in the exercise of ordinary care reasonably anticipated or foreseen that there would be an injury to her or some similar injury, she would be entitled to recovery. Under the law no duty of reasonable anticipation or foreseeableness was placed upon the minor defendant with regard to his act of commission or omission and in order for his acts of commission or omission to be a proximate cause of the injuries, if any, sustained by Miss Hazel Neal, it would be necessary for him to reasonably anticipate or foresee that the injury to Miss Hazel Neal or some similar injury would result from his conduct or his acts of commission or omission when he was so lacking in the want of any care as would raise the belief that the act of commission or omission complained of could have been reasonably anticipated or foreseen by a person exercising such entire want of care as would raise the belief that his acts of commission or omission would result in injury of some character. In other words, in order for the acts of the defendant, Blair Kirkpatrick, to be a proximate cause and to make the defendant, Blair Kirkpatrick, liable to the plaintiff, Hazel Neal, it would be necessary under the law applicable to this case for the defendant to have anticipated and foreseen that his conduct while acting in heedless and reckless disregard of the rights of others would have resulted in the injuries to the plaintiff, Hazel Neal.

"(b) The defendants now request the Court to give the following definition of proximate cause as applied to the minor defendant:

" 'By the term "proximate cause," as used in this charge, when applied to the minor defendant, Blair Kirkpatrick, is meant a cause which in a natural and continuous sequence, unbroken by any new and independent cause, produces an event and without which the event would not have occurred, and to be a proximate cause of an event as applied to the minor defendant, Blair Kirkpatrick, it should have been reasonably anticipated and foreseen by a person under the same or similar circumstances, lacking in an entire want of care for the rights or welfare of other persons to be affected by his acts of commission or omission, that the event or some similar event would result as a natural and probable consequence.'

"If for any reason the suggested definition of proximate cause as applied to the minor defendant is incorrect, then in that event these defendants will point out and show to the Court the vice in the definition of proximate cause as given by the Court and request the Court to submit a correct definition of proximate cause so as not to apply to the minor defendant, Blair Kirkpatrick, the element of reasonable foreseeableness to that of an ordinary person in the exercise of ordinary care."

This objection and exception to the charge was overruled.

It is insisted that as appellant would not be liable to appellee for her injuries received as a result of the manner of his driving and managing the automobile in which they were riding unless his heedlessness and recklessness in the manner of operating the automobile caused the injuries to appellee, Miss Neal, wherefore "caused" as used in Article 6701b was used in the sense of and meant "proximate cause," and the term therefore should be strictly construed, and no recovery should be allowed for acts of ordinary negligence. In other words, counsel for appellant insists that in order for the acts of appellant in operating the car to have been the proximate cause of the injuries suffered by appellee by reason of the collision, and to have made appellant liable to appellee for the result of his said acts, it would have been necessary under the law applicable to this case for appellant to have anticipated and foreseen that his conduct while acting in heedless and reckless disregard of the rights of others would have resulted in the injuries to appellee, Miss Neal. We think the objection to the definition of the term "proximate cause" without merit. The statute creating the cause of action, under the Guest Statute, Article 6701b, § 1, says:

"No person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others."

The quality of the act or acts creating the right of action is that the acts be either intentional or in heedless or reckless disregard of the rights of others. In the instant case injuries of appellee are al-

leged to have been caused by the heedless and reckless acts of appellant in the operation of his car. In any view, the acts of appellant, if established by the evidence, were acts of negligence. For these acts of negligence to support an action for damages they must have been a proximate cause of the injuries suffered by reason of them. The term "proximate cause" is a legal term with a fixed and long established meaning. Southland Greyhound Lines v. Cotton, 126 Tex. 596, 91 S.W.2d 326. While difficult to define, the definition as given by the court in the instant case has had the general approval of the appellate courts, and, indeed, is not questioned here by appellant, except as contended that it placed a greater burden on appellant than the law required under the Guest Statute because it required appellant "to exercise that degree of care of an ordinarily prudent person in the exercise of ordinary care to reasonably anticipate and foresee the happening of the event complained of or some similar event, when under the Texas Guest Statute and the decisions construing it the minor defendant, Blair Kirkpatrick, did not owe to the minor plaintiff any duty whatsoever of exercising ordinary care to reasonably anticipate or foresee that his acts of commission or omission would result in injury to Miss Neal or some similar injury, but in all of the issues submitted by the court in its charge dealing with proximate cause, taken in connection with the definition of proximate cause, the jury is instructed and informed that if the minor defendant was guilty of such an entire want of care (not excluding but including ordinary care) sufficient to raise the belief or presumption that his act of commission or omission was the result of conscious indifference to the right, welfare or safety of Miss Hazel Neal and that he should have in the exercise of ordinary care reasonably anticipated or foreseen that there would be an injury to her or some similar injury, she would be entitled to recover." It appears, as we understand the objection to the charge, that it complained that the charge placed a less burden on appellant for it required a finding of lack of exercising of ordinary care of an ordinarily prudent person to anticipate and foresee that the acts of appellant would result in some injury to others in the car, when the terms of the statute required the finding of negligence amounting to gross negligence. It is insisted by appellant that under the law no duty of reasonable anticipation

or foreseeableness was placed upon appellant with regard to his act of commission or omission, and for his acts of commission or omission to be a proximate cause of the injuries sustained by Miss Neal it would be necessary for him to reasonably anticipate or foresee that the injury to Miss Neal or some similar injury would result from his acts in the management of the car, when he was so lacking in the want of any care as would raise the belief that his acts would result in injury of some character, in other words, that, in order for the acts of appellant to be a proximate cause of the injuries suffered by Miss Neal, and to make him liable therefor, under the law it would be necessary for appellant to have anticipated and foreseen that his conduct while acting in heedless or reckless disregard of the rights of others would have resulted in the injuries to Miss Neal, appellee. In all suits for damages caused by the negligent acts of another, the issue of proximate cause is involved. Whether the injury suffered by the complaining party was caused by the alleged negligent acts of the party complained against is a question for the jury. It is believed that as the term "proximate cause" has a well settled and long established legal meaning, that such meaning in the language usually used in expressing same is all that is required in embodying same in a charge to the jury, and this without regard to the quality of the act of negligence alleged, this going only to the degree of relief authorized by law. The court did not err in refusing to give the special charge requested in his objection to the definition of "proximate cause" in the court's charge, the requested issue not being a correct charge.

█ Assignment sixteen is overruled. It was necessary for the court, in his charge, to define "negligence," and "ordinary care," this being a suit for damages under the Guest Statute, Article 6701b, Vernon's Ann. Civ.St. No objection is made to the substance of the definitions, but only to them in connection with the charge on "proximate cause." There is no merit in the assignment.

Assignment seventeen, urging that there was no basis in the verdict of the jury and the judgment of the court entered thereon for a judgment against appellant, under the Texas Guest Statute, is overruled. The court submitted all the necessary issues made by the pleadings and raised by the

evidence for the finding of the jury, which were all answered in favor of appellee, and the findings of the jury upon each of the issues submitted has ample support in the evidence.

The eighteenth assignment (22 in back of brief) complains that the measure of damages "should have been limited to those proximately resulting from the acts of heedless and reckless disregard of appellant." The issue submitted required the jury to find what sum of money would reasonably compensate appellee, Miss Neal, for the personal injuries, if any, sustained by her as a proximate result of the collision in question, etc., properly setting forth the elements of damage which could be considered, and excluding any other. The assignment is without merit and is overruled. A. B. C. Storage & Moving Co. v. Herron, Tex.Civ.App., 138 S.W.2d 211; Smith v. Triplett, Tex.Civ.App., 83 S.W.2d 1104; Edens-Birch Lumber Co. v. Wood, Tex.Civ.App., 139 S.W.2d 881.

We overrule the assignment of error that the court erred in "not allowing this defendant's doctors to make a physical examination of the plaintiff after she had voluntarily submitted her person in evidence through X-ray pictures." When the court refused the request of appellant that his doctors be permitted to make a physical examination of appellee, appellant excepted to the ruling of the court and prepared and presented to the court his bill of exceptions. The court approved the bill with these qualifications:

"The Court does not certify to the correctness of the bill wherein it attempts to set out the court's reasons for overruling said motion.

"The chief issue as to injury to the minor plaintiff in this case was not whether the skull fracture, if any, had healed, but whether there had been a brain injury—a tearing or laceration of the brain.

"On this issue the medical testimony showed that to determine such issue from a medical standpoint at the time of the trial, one of three things would be necessary:

"(1) Drill holes for the purpose of making tests;

"(2) Puncture the spinal canal, withdraw the cerebral spinal fluid therefrom and inject or force air in the canal and brain; or

"(3) Have the minor plaintiff under observation for from six to eight months.

"The court, in its discretion, was unwilling to force the minor plaintiff to undergo the pain and hazards incident to the first two tests and the third was out of the question because of the time that would be involved.

"This bill of exception is ordered filed as a part of the record in this cause as qualified.

(s) Kenneth McCalla, Judge."

No abuse of discretion is shown. We do not believe that the offering of an X-ray picture by a plaintiff to show the condition of some part of his body resulting from an injury is the exhibition physically of the affected part. Until the injured party exhibits to the jury the portion of his body affected by the injury, there is no absolute right of the opposite party to a physical examination by a physician of his choosing to examine the injured body of the claimant. Certainly the introduction of an X-ray picture of some injured part becomes subject to the examination of experts of the opposite party, but not the person of the injured party unless and until a physical exhibition of the injured part has been voluntarily offered in evidence by the party plaintiff. Austin & N. W. Ry. v. Cluck, 97 Tex. 172, 77 S.W. 403, 64 L.R.A. 494, 104 Am.St.Rep. 363, 1 Ann.Cas. 261. This appears to be the well settled rule in Texas.

It appears and is admitted by appellee that in preparing the judgment an error of $120 was made in the items of costs of hospitalization. Appellee asks that a remittitur in that sum be made, and it is so ordered, reducing the judgment for hospitalization from $823.95 to $703.95. A previous remittitur by order of the court had been made of two items. This should have been discovered at that time.

We overrule appellant's 22nd assignment that the judgment for $1,500 in favor of Robert Neal, father of appellee Hazel Neal for the loss of services to her father was without pleadings to support the judgment. We think the pleading, considered as a whole, affords a basis for the judgment. Furthermore, special issue 50, in which this matter was submitted to the jury, was not objected to for lack of pleading to support same. Nor was such objection made in the motion for a new trial. It was objected to on other grounds, and no objection for want of pleading having been made it was waived, however, in the absence of special exception for that reason, the pleading was sufficient.

The 29th (and last) assignment reads: "The court should grant these defendants a new trial because the evidence is wholly insufficient to support the finding of the jury to special issue No. 49 that the minor plaintiff, Hazel Neal, had sustained damages in the sum of $18,800.00."

We doubt the sufficiency of this assignment to present the question of sufficiency of the evidence to support the judgment. It is too general. 3 Tex.Jur. 860, § 600. However, it is believed that the evidence abundantly supports the verdict as to damages suffered by Miss Neal. She was a healthy, energetic, intelligent and popular girl of seventeen years of age when she was injured. She was slammed against the floor of the bridge with such force as to inflict numerous and serious bodily injuries; she was unconscious for four days; had a skull fracture several inches in length; injury to both sides of the brain; an injury to her breast which up to the time of trial, some year after the accident, was still giving her considerable trouble; and received many other injuries, such as bruises and skinned places, leaving scars on her head, face and body. She was confined to the hospital at Freeport (where the accident occurred) for three weeks, when she was removed in ambulance to her home at Houston; on the second day after being taken home, she had to be taken to a hospital where she remained for four months. She has been under the constant care of physicians and surgeons from the time of the injury until the time of the trial, and has suffered and is still suffering both physical and mental pain constantly; it was shown that the pain in the head caused by the injury to the brain and from which she still suffers severely could produce constant headaches, epilepsy and might produce insanity. Without mentioning other evidences of injury and loss shown by the record, particularly relating to her ability to work, and loss of earning power, we will say that the judgment has support in the record and does not indicate passion or prejudice on the part of the jury. The assignment is overruled.

No reversible error being shown, the judgment must be affirmed, but because of the reformance by striking out the sum of $120 in the item of hospitalization, the costs of the appeal will be taxed against appellee. Judgment as reformed affirmed. Costs of appeal taxed against appellee.